ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT WORTH DIVISION
2007 JUN 11 PM 3:26
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BELL HELICOPTER TEXTRON INC.,          §
AND, TEXTRON INNOVATIONS INC.,         §
                                        §
                                        §          CIVIL ACTION NO. 4-06CV-841-A
v.                                      §
                                        §
ELECTRONIC ARTS, INC.                   §

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS, AND BRIEF IN SUPPORT

Submitted by

Beale Dean
Texas Bar No. 05685000
Stephen C. Howell
Texas Bar No. 10107700
John G. Sams
State Bar No. 17566100

ATTORNEYS FOR PLAINTIFFS

Of Counsel:

Brown, Dean, Wiseman, Proctor,
       Hart & Howell, L.L.P.
306 West 7th Street
Fort Worth Club Bldg.
Suite 200
Fort Worth, Texas 76102
(817) 332-1391
(817) 870-2427 Facsimile

Dockets.Justia.com

## **Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 12(b)(6) Standard . . . . . . . . . . . . . . . . . . . . . . . . . 1

EA's Position Regarding 15 USC 1125(a)1A - Summary of the Argument . . . . . . . . . 2

First Amendment Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Commercial Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Trademark Dilution claim - Defendant Unclear As To Relief Sought . . . . . . . . . . . . 10

Neither the Current Nor the Older Version of §1125(c) Support EA's Interpretation . 11

Typical Example Not the Only Example . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Causes of Action Chosen by Others Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## **Table of Authorities**

*American Amusement Machine Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) ...... 3

*Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 67 (1983) ...................... 5

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980) ........................................................... 3

*Cliff Notes, Inc. v. Bantam Doubleday Dell Publishing Group*, 886 F.2d 490, 495 (2d Cir. 1989) ................................................................... 4

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) .................................... 1

*Entertainment Software Ass'n v. Foti*, 451 F.Supp. 2d 823 (M.D. La. 2006) .......... 3

*E.S.S. Entertainment 2000, Inc.v. Rock Star Videos, Inc.*, 444 F. Supp.2d 1012 (C.D. Cal 2006) ...................................................... 5, 9

*ETW Corp v. Jireh Publishing, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) ............. 4

*Gordon & Breach Science Publishers v. American Institute of Physics*, 859 F.Supp. at 1521 (S.D.N.Y. 1994) ......................................................... 7

*Guerro v. Gates,* F.3d 911, (9th Cir. 2004) ....................................... 2

*Hasbro, Inc. v. Clue Computing, Inc.* 66 F.Supp.2d 117, 134 (D.Mass.,1999) ........ 12

*Horphag Research Ltd. v. Garcia*, 475 F3d 1029 (9th Cir. 2007) ................... 14

*Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003) .... 3

*I.P.Lund Trading ApS v. Kohler Co.*, 11 F.Supp.2d 112 (D.Mass. 1998) ............ 11

*James v. Meow Media,* 300F.3d 683, 696 (6th Cir. 2002) ......................... 5

*Memphis Tenn. Area Local v. City of Memphis*, 361 F.3d 898, 904 (6th Cir. 2004) ..... 2

*Neal v. Electronic Arts, Inc.*, 374 F.Supp.2d 574 (W.D.Mich. 2005) ................. 2

*Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546, 1552-1553 (S.D. Fla. 1990) ...................................................... 4

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P., v. Coops & Lybrand, L.L.P.*, 332 F.3d 147, 158 (2d Cir. 2003) ............... 1

*Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . 14

*Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 545 (5th Cir. 2001) . . . . . 5, 6, 7, 8

*R.A.V. v. City of St. Paul, Minn.*, 503 US 377, 395 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 211 (S.D.N.Y.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F.Supp. 605, 614-615 (E.D.Va.1997), *aff'd*, 170 F.3d 449 (4th Cir.1999) . . . . . . . 12

*Rogers v. Grimaldi*, 875 F.2d 994, 998 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383, n. 6 (5th Cir. 1996) . . . . . . . . . . 6, 7

*Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*US v. Cyprian*, 197 F.3d 736, 739 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Va. Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976) . . . . . 8

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) . . . . . 4, 8, 9

*Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F.Supp.2d 1254, 1261-1262 (N.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*World Impressions, Inc. v. McDonald's Corporation*, 235 F.Supp.2d 831 (ND.Ill. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Yankee Publishing Inc. v. News Am. Publishing Inc.*, 809 F. Supp. 267, 276-278 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **Statutes**

15 U.S.C. 1125(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8, 15

15 U.S.C. § 1125(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13, 15, 16

FED. R. CIV. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 9, 11, 13, 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BELL HELICOPTER TEXTRON INC., §
AND, TEXTRON INNOVATIONS INC., §
§
§                                                CIVIL ACTION NO. 4-06CV-841-A
v.                                            §
§
ELECTRONIC ARTS, INC.          §

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS, AND BRIEF IN SUPPORT

COME NOW Plaintiffs, Bell Helicopter Textron Inc., and Textron Innovations Inc.,

(collectively sometimes referred to as "Plaintiffs" and/or "Bell") and file their Response to

Defendant Electronic Arts, Inc.'s ("EA") Motion to Dismiss and Brief in Support, and in

support thereof, would respectfully show the Court as follows:

### I.

### Federal Rule of Civil Procedure 12(b)(6) Standard

The standard upon which EA's motion to dismiss for failure to state a claim upon

which relief can be granted at the outset of the litigation is a relatively heavy burden. The

Court should dismiss a suit under Federal Rule of Civil Procedure 12(b)(6) only "if it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A court's

task in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support."

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.,*

*v. Coops & Lybrand, L.L.P.*, 332 F.3d 147, 158 (2d Cir. 2003). Morever, the Plaintiffs'

Complaint need not be clairvoyant and anticipate every defense and "accordingly need not

plead every response to a potential defense." *Memphis Tenn. Area Local v. City of

Memphis*, 361 F.3d 898, 904 (6th Cir. 2004). Finally, and most importantly, all allegations

of material fact are taken as true and construed in the light most favorable to the

nonmoving party. *Guerrero v. Gates*, 357 F.3d 911, 916 (9th Cir. 2004).

II.

### EA's Position Regarding 15 U.S.C. 1125(a)1(A)
### Summary of the Argument

Section A of EA's motion is founded on the remarkable idea that computer video

games are a form of communication completely exempt from the Lanham Act. Apparently

it is EA's view that a video game manufacturer has a constitutionally protected right to use

in its games false and misleading statements that are likely to confuse the consumer as

to the origin, sponsorship, approval, or affiliation of the game.[1] EA reaches this proposition

by citing several cases that extend First Amendment protection to the content of video

games. Because the content of games is subject to First Amendment protection, EA

reasons that they cannot be a form of "commercial speech". EA contends that the Lanham

Act only applies to commercial speech, therefore EA concludes that the Lanham Act

cannot apply to the content of video games.

---

[1] Plaintiffs' note that EA's current "laissez faire" position on intellectual property licensing seems curiously at odds with the position it took in *Neal v. Elec. Arts, Inc.*, 374 F.Supp.2d 574 (W.D.Mich. 2005), where EA utilized a licensing agreement it had with the National Football League ("NFL") for the use of its intellectual property as a defense to invasion of privacy and defamation claims brought by an NFL player portrayed in an EA software title.

Neither Congress nor the Courts have elevated video games to the privileged constitutional status that EA espouses.  Simply because a mode of communication is subject to First Amendment protection does not mean it is not commercial speech. Commercial speech is also protected by the First Amendment. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  The cases cited by EA make no attempt to analyze or determine whether the speech at issue was commercial speech. That determination is a factually specific inquiry, and is certainly not appropriate for resolution on a Federal Rule of Civil Procedure 12(b)(6) motion filed with the original answer.

### III.

### First Amendment Protection

At the core of EA's argument are several recent cases where video game manufacturers sued governmental entities.[2]  These suits challenged the constitutionality of local ordinances regulating the content of video games.  At issue was whether video games constitute a form of speech.  In each of these cases, the courts concluded that the aspects of the games that the statutes were attempting to regulate were a form of speech subject to First Amendment protection.  The courts made no attempt to analyze, however, whether the speech involved was "commercial speech".  That issue was not relevant to the disposition of the cases. Once the courts determined that the content of video games was a form of speech subject to First Amendment protection, the statutes at issue had to meet

---

[2] *Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003); *Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001); *Entm't Software Ass'n v. Foti*, 451 F.Supp. 2d 823 (M.D. La. 2006).

the "strict scrutiny" standard, as facially content-based laws that targeted a specific group. *See R.A.V. v. City of St. Paul, Minn.*, 503 US 377, 395 (1992). Obviously, the present case does not involve a governmental entity or a facially content-based statute targeting a specific group. In fact, the relevance of EA's local ordinance cases is not clear, other than the fact that the medium of communication involved was a computer video game.

Simply because a medium of communication is subject to First Amendment protection does not automatically exempt it from the Lanham Act. *Cf. Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir. 1989) ("Trademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression"). Under its very terms, the Lanham Act regulates the use of words, terms, names, symbols, designations of origin, or false or misleading representations, or descriptions of fact. *See* 15 U.S.C. § 1125(a)(1). By definition most Lanham Act violations will involve the use of some medium of communication that is subject to First Amendment protection, whether it is a magazine, newspaper, book, or television broadcast. Courts regularly evaluate whether a specific Lanham Act violation infringes upon First Amendment rights, and a set of standards for making this determination has been developed by the courts, including the Fifth Circuit (the *Rogers* test). *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000); *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).[3] In fact, elsewhere in its brief

---

[3] Although the *Rogers* test explicitly addressed only titles, the Second Circuit, the Sixth Circuit, and lower courts in other circuits have extended the *Rogers* test to all expressive uses of trademark or trade dress in artistic works, whether in titles or not. *See, e.g., Cliff Notes, Inc. v. Bantam Doubleday Dell Publ'g Group*, 886 F.2d 490, 495 (2d Cir. 1989) (holding *Rogers* test properly applies to "expressive elements" of parodies); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) (*Rogers* test applied to use of trademark term in marketing materials for painting); *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 276-78 (S.D.N.Y. 1992) (*Rogers* test applied to cover design for book); *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546, 1552-53 (S.D. Fla. 1990) (*Rogers* test applied to depiction in movie).

the Defendant cites a case that applies the *Rogers* test to a Lanham Act claim against a video game manufacturer. *E.S.S. Entm't 2000, Inc.v. Rock Star Videos, Inc.*, 444 F. Supp.2d 1012 (C.D. Cal 2006).[4]

## IV.

### Commercial Speech

There are no cases holding that commercial video games cannot constitute or contain "commercial speech" as a matter of law. To the extent the issue is relevant, whether EA's use of Plaintiffs' intellectual property in this case was commercial speech is something that would require detailed factual development. The Supreme Court has developed a set of factors for determining whether specific speech is commercial. *See Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 67 (1983). Applying the *Bolger* factors is necessarily a fact-specific inquiry and may ultimately present issues for the finder of fact. *See Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 552 (5th Cir. 2001). The evidence will show that EA makes extensive use of Plaintiffs' product images, product name, and/or trade dress on EA's retail product packaging, its game guides and on its promotional web site for the purpose of promoting the sale of its video games. In addition, EA has incorporated Bell's product images and trademarks not merely as background images and artwork, but as an important functional component of the game itself.[5] The evidence will show that EA sells these games and consumers purchase these games in

---

[4] EA's present motion makes no attempt to analyze the *Rogers* test or apply it to the specific facts of this case. Obviously, this would require a detailed factual analysis of the Defendant's alleged conduct, which would be premature in the context of a 12(b)(6) motion filed with the original answer.

[5] The functional aspects of a video game may not be a form of speech at all. *See James v. Meow Media*, 300 F.3d 683, 696 (6th Cir. 2002).

whole or in part for the purpose of flying simulations of Bell helicopters.    Clearly,

application of the *Bolger* factors to these circumstances will require factual development

beyond the unsupported statements of the parties in their motions and pleadings.    This

issue is not ripe or appropriate for resolution in the context of a 12(b)(6) motion filed with

the Defendant's original answer.

    While not essential to the disposition of the current motion, whether the Lanham Act

applies only to "commercial speech" is certainly not as settled an issue as EA contends.

The act defines two distinct "prongs" for civil liability:

> (A)    Using in commerce any word, term, name, symbol, etc., which "is likely to
> cause confusion, or to cause mistake, or to deceive as to the affiliation, connection,
> or association of such person with another person, or as to the origin, sponsorship,
> or approval of his or her goods, services, or commercial activities";

> or

> (B)    Using in commerce any word, term, name, symbol, etc., which "in
> commercial advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's goods, services, or
> commercial activities".

15 U.S.C. § 1125(a)(1).

    Plaintiffs have brought their causes of action under subsection (A) of the Act.    A

close review of the authority cited by EA for its "commercial speech" limitation casts doubt

as to whether the Fifth Circuit intends that requirement to go beyond a Section "B" claim.

The "commercial speech" requirement language cited in *Proctor & Gamble Co. v. Amway

Corp.*, 242 F.3d 539, 552 (5th Cir. 2001) comes from a footnote in *Seven-Up Co. v. Coca-

Cola Co.*, 86 F.3d 1379, 1383, n.6 (5th Cir. 1996).    *Seven-Up Co.* involved an advertising

claim under Section "B" of the Lanham Act.    In its statutory analysis of the phrase

"commercial advertising or promotion" used in Section "B", the Court noted that the "commercial" requirement "was inserted to ensure that § 43(a) does not infringe on free speech". *Id.* Though the Court was discussing a specific phrase in Section "B", the footnote makes a more global reference to "§ 43(a)". *Id.* Reading the footnote in its entirety, however, it is clear that the Court was not attempting with the footnote to limit or alter the substantive reach of Section "A". At the bottom of the footnote, the Court directs the reader's attention to *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F.Supp. at 1521 (S.D.N.Y. 1994), for a discussion of the legislative history of the Lanham Act. *Id. Gordon & Breach Sci. Publishers* clarifies that the "commercial advertising" requirement in the Lanham Act applies only to Section "B" claims:

> Section 43(a)(1)(B) of the Lanham Act "was designated § 43(a)(2) under the 1988 amendments but, following subsequent amendment in 1992, is now codified at § 43(a)(1)(B). The other substantive 'prong' of Section 43(a) (formerly § 43(a)(1) but now designated § 43(a)(1)(A)) deals with infringement of trademarks, tradenames, and trade dress. *See* McCarthy on Trademarks §§ 27.02[3], 27.03. The infringement prong is not expressly confined, as is the false advertising prong, to misrepresentations made "in commercial advertising or promotion," and the discussion of false advertising which follows is not intended to apply to infringement claims made under § 43(a)(1)(A)."

*Gordon & Breach Sci. Publishers*, 859 F.Supp. at 1532, n.6.

The discussion of the "commercial speech" requirement in *Seven-Up Co.* is *dicta* since there was no dispute that the speech in question was commercial; the Court itself said that the legislative history was not "helpful" in resolving the issues at hand, since the issue was whether the speech was "advertising or promotion". *Seven-Up Co.*, 86 F.3d at 1383. Unfortunately, the Fifth Circuit's later opinion in *Proctor & Gamble Co.* clouded the issue by citing the global reference to "43(a)" in *Seven-Up Co.* Apparently, the distinction

between Section (A) and Section (B) claims was not briefed in *Proctor & Gamble Co.*; otherwise the Court would have recognized that the "holding" in *Seven-Up Co.* was actually much more limited. *Proctor & Gamble Co.* was later cited in *dicta* in another Fifth Circuit opinion, *TMI, Inc. v. Maxwell*, 368 F.3d 433, 436 (5th Cir. 2004).

Had a more detailed statutory analysis been required in *Procter & Gamble Co.*, the Fifth Circuit would doubtless have observed that the basic rules of statutory interpretation operate against an interpretation that the Lanham Act is limited to commercial speech defined as essentially advertising. If civil actions could only be maintained under the Lanham Act for representations made in "commercial advertising," which is already covered explicitly under Section "B" claims, it becomes unclear what Section "A" of 15 U.S.C. 1125(a)(1) is supposed to mean, and why Congress bothered to include it in the statute. The rules of statutory construction mandate an assumption that Congress intended each term of a statute to have a particular non-superfluous meaning. *U.S. v. Cyprian*, 197 F.3d 736, 739 (5th Cir. 1999). Congress included the words "commercial advertising" in Section "B", but left them out of Section "A". This mandates the conclusion that Section "A" was meant to be applied much more broadly.

Regardless of the confusion engendered by the Fifth Circuit's global language in *Procter & Gamble* Co., it is clear that EA's position that the Lanham Act applies only to commercial speech as defined by *Va. Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976) is unsupportable. Several courts in several Circuits, including the Fifth, have applied the Lanham Act to expressive content that is not "commercial speech"

as defined by *Va. Bd. of Pharm.*[6]   In *Westchester Media*, the Fifth Circuit analyzed Lanham Act claims against a magazine publisher for use of an infringing trademark term in a magazine title.   214 F.3d 658.   The Circuit, though recognizing the existence of a Lanham Act cause of action, held that the First Amendment concerns required an analysis balancing First Amendment concerns with intellectual property interests.   Nowhere in *Westchester Media* can be found the idea that the Lanham Act did not apply at all because the infringing speech was not "commercial".   Courts have on many occasions applied the *Rogers* test to expressive content, including the content of video games, which would obviously be unnecessary if the Lanham Act did not even apply. *See E.S.S. Entm't 2000, Inc.*, 444 F. Supp.2d 1012.

EA's brief, in arguing for total immunity for artistic works from Lanham Act regulation, completely ignores *Westchester Media* and like cases. The approach taken by the Fifth Circuit and other courts to protect First Amendment interests for expressive works is not total immunity; rather they apply the *Rogers* test and similar balancing analyses.[7] EA's present motion makes no attempt to analyze the "*Rogers*" test or any other test, or apply them to the specific facts of this case.   Obviously, this would require a detailed factual analysis of the Defendant's alleged conduct, which would be premature in the context of a 12(b)(6) motion filed with the original answer.   For these reasons alone, Defendant's 12(b)(6) motion should be denied.

---

[6]  See footnote 3, *supra*.

[7.]  A full discussion of the various tests used by courts is beyond the scope of this brief.

## V.

## Trademark Dilution Claim
## Defendant Unclear As To Relief Sought

In EA's second argument of its 12(b)(6) motion, Defendant asserts that Plaintiffs'

claim under the Federal Trademark Dilution Act (hereinafter sometimes referred to as

"FTDA"), 15 U.S.C. § 1125(c) must be dismissed.

As with their previous argument, EA is vague as to what specific relief it is seeking.

EA fails to clearly delineate in its argument whether it is asking the Court to dismiss both

the Plaintiffs' trademark or both Plaintiffs' trademark and its trade dress claims under the

FTDA.[8] Similarly, as drafted, EA's argument is unclear as to whether it is seeking relief for

just the content of the infringing video games "Battlefield 2", "Battlefield Vietnam" and

"Battlefield Vietnam: Redux" themselves or also for the packaging as it is presented to the

consumer (including its infringing box art and disc art) as well as the promotional content

on EA's website and corresponding game strategy guide.[9]

---

[8] EA, at times, suggests that it is applying its argument to both Plaintiffs' trademark and trade dress claims under 15 U.S.C. § 1125(c) (Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 5, 2nd full paragraph "The Complaint also alleges that EA's accurate depiction of Plaintiffs' helicopters and accurate identification of them by name in Battlefield games...." and Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 7, 2nd full paragraph "The Complaint is directed at the mere inclusion of the helicopters and their names on or in the Battlefield games themselves") or whether the argument is limited to just Plaintiffs' trademark (Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 6, 2nd full paragraph "... EA is aware of no decision in which a court has held that the use of a purported trademark within the content of expressive work...." and Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 7, 1st full paragraph "... in those few instances where a plaintiff has actually challenged the use of its trademark within the content of another's expressive work").

[9] Compare Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 5, 2nd full paragraph ("The Complaint also alleges that EA's accurate depiction of Plaintiffs' helicopters and accurate identification of them by name in Battlefield games....") with Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 7, 2nd full paragraph ("The Complaint is directed at the mere inclusion of the helicopters and their names *on or in* the Battlefield games....").

---

If EA is seeking to also dismiss Plaintiffs' trade dress dilution claims under the FTDA, EA fails to cite any authority for its position. The case law cited by EA in support of its argument only deal with trademarks and not trade dress. It is clear, however, that the FTDA applies to both trademarks and trade dress. *See e.g., I.P.Lund Trading ApS v. Kohler Co.*, 11 F.Supp.2d 112 (D.Mass. 1998). EA does not argue to the contrary, but is simply vague as to specifically what it is asking this Court to dismiss.

Even on this preliminary basic level, EA is so vague in its requested relief, its 12(b)(6) motion should be denied on this basis alone.

## VI.

## Neither the Current Nor the Older Version of §1125(c) Support EA's Interpretation

In support of its argument, citing 15 U.S.C. § 1125(c)(2)(B), EA states that "[u]nder the FTDA, 'dilution by blurring' requires that the defendant make actual *trademark* use of a plaintiff's allegedly famous mark as the defendant's own mark." [emphasis in the original] *See* Elec. Arts Inc.'s Mot. to Dismiss and Br. in Supp. at 5. However the 2006 amendments to 15 U.S.C. § 1125(c)(2)(B) make no such statement and are not limited to just trademarks in their application. In fact 15 U.S.C. § 1125(c)(2)(B) envisions an analysis of several enumerated factors that necessarily place this issue beyond 12(b)(6) consideration. Section 1125(c)(2)(b) states:

> (B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

(I)    The degree of similarity between the mark or trade name and the famous mark.

(ii)    The degree of inherent or acquired distinctiveness of the famous mark.

(iii)    The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv)    The degree of recognition of the famous mark.

(v)    Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi)    Any actual association between the mark or trade name and the famous mark.

*See* 15 U.S.C. § 1125(c)(2)(B)(2006).

While EA cites the preamble language of 15 U.S.C. § 1125(c)(2)(B), it ignores the factors enumerated (and the fact-based analysis that they require) in the statute to be considered by the Court.

The cases cited by the Defendant interpret the older version of §1125(c) and none of said cases interpret the new version of statute. However, even those interpreting the older version of the statute required an in-depth factual analysis. *See Hasbro, Inc. v. Clue Computing, Inc.* 66 F.Supp.2d 117, 134 (D.Mass. 1999) ("A charge of dilution by blurring requires a complex case-by-case factual examination"); *see also Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 211 (S.D.N.Y. 1996). The basic idea of blurring is that the defendant's use of the plaintiff's mark causes the public no longer to think only of the plaintiff's product upon seeing the famous mark, but rather to associate both the plaintiff and the defendant with the mark. See *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F.Supp.

605, 614-15 (E.D.Va. 1997), *aff'd*, 170 F.3d 449 (4th Cir. 1999); *Hasbro, Inc. v. Clue Computing, Inc.* 66 F.Supp.2d 117, 134 (D.Mass.,1999) (citing 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:90.1 (4th ed. 1996)) ("Blurring is one mark seen by customers as now identifying two sources"). Because the statute envisions a complex factual examination, a dismissal of this claim on the basis of 12(b)(6) at the outset of the litigation prior to discovery being conducted would be improper.

More importantly, none of the cases cited by EA take the strict interpretation of the statute that EA does nor do the cases support its position that Plaintiffs' dilution claims should be dismissed as a matter of law.

## VII.

### Typical Example Not the Only Example

While EA cites some "typical" or "classic" examples of dilution by blurring claims to support its narrow statutory interpretation of 15 U.S.C. § 1125(c)(2)(B), said examples are not definitive nor exhaustive of all claims that may be brought under the FTDA. Assuming *arguendo* that EA is referring only to trademarks, dilution claims have been brought where the infringing party has used the intellectual property owner's trademark in their product but not as a name of their product – which EA suggests is the only manner in which such a claim can exist.

Courts have either found dilution existed or allowed such claims to move forward where the infringement used the intellectual property owner's trademark in the infringing party's product – rather than in just its name. In *World Impressions, Inc. v. McDonald's Corp.*, 235 F.Supp.2d 831 (ND.Ill. 2002), Disney counter claimed against a map

---

manufacturer who made maps of tourist areas of Southern California for its use of the Disney castle logo and phrase "Disneyland" on its products.  The court concluded, after considering the 15 U.S.C. § 1125(c) that Disney had established dilution by blurring.  *Id.* The court wrote: ". . .[counter defendant's] use of the distinctive, stylized form of the word "Disneyland" on its maps, as opposed to a plain form, implies that Disney sponsored the maps. Thus, this use lessons the capacity of Disney's "DISNEYLAND" mark to serve as a unique identifier." *Id.* at 847. In *Horphag Research Ltd. v. Garcia*, 475 F3d 1029 (9th Cir. 2007), a trademark holder who held a trademark for the term "Pycnogenol" brought a dilution action under the FTDA against a competitor who used the word on its website. The defendant in *Horphag* had utilized the plaintiff's trademarked term as a generic term in several places on its website referring to both its product and that of the plaintiff.  *Id.*  The Ninth Circuit affirmed the District Court's granting of the trademark holder's motion for judgment as a matter of law on the dilution claim.

In *Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002), the Ninth Circuit upheld the district court's granting of summary judgment in favor of the defendant who used the plaintiffs' trademarks on her website, except for her use of "PMOY". The defendant in Playboy was using the term "PMOY" as a background wallpaper on her own web-site. *Id.* at 799.  The Ninth Circuit, in remanding this issue to the District Court, found that unlike the other trademarks on which Playboy urged dilution claims,  if  "PMOY" was entitled to trademark protection it would not be exempted from the anti-dilution statute. *Id.* at 806. These cases demonstrate that claims brought under the FTDA are not limited to the "classic" view asserted by EA and Plaintiffs need not limit their pleadings to alleging

that EA used its marks as EA's own marks. As in *World Impressions, Inc.*, Plaintiffs asserts in its complaint that EA is utilizing its trademarks and trade dress in its products and that such use of Plaintiffs' trademarks and trade dress in EA's software implies that Plaintiffs sponsored the game software. Plaintiffs must be allowed to conduct discovery and the Court must conduct a factual inquiry before determining the merits of Plaintiffs' dilution claim.

Finally, EA states that it is not aware of any decision in which a court has found dilution by blurring in an "expressive work". The absence of authority can not be interpreted as authority to support EA's position. EA essentially asks the Court to accept EA's assertion that its video games are "expressive works." The term "expressive work" is not contained in the discussions of 15 U.S.C. § 1125(c) in either of the two cases cited by EA nor in the statute itself. This "term of art" seems to be a term EA invented for use in the context of trademark dilution or at least co-opted from its arguments under 15 U.S.C. §1125(a). Further, *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F.Supp.2d 1254, 1261-62 (N.D.Cal. 2003) does not stand for the proposition that a trademark dilution claim can not be brought in the context of a motion picture - if anything it establishes that a factual analysis of each prong of 15 U.S.C. § 1125(c) must be conducted by the Court in determining if dilution exists.

### VIII.

### Causes of Action Chosen by Others Irrelevant

Lastly, the fact that in certain other cases the owner of the intellectual property seeking to recover for infringement did not seek to recover for dilution as well is of little

---

relevance. None of the cases put forth by EA state that a trademark dilution claim cannot be brought in the video game or software context.

Neither Plaintiffs' trademark or trade dress dilution claims can be dismissed as a matter of law. Both require a level of fact-based inquiry and analysis that is beyond a 12(b)(6) motion.    EA's unauthorized use of the AH-1Z, AH-1, Huey and Cobra and variations thereof dilutes the ability of the Plaintiffs to license their trademarks (and trade dress) in the video game/software field and the effectiveness of their licenses. Consumers may associate Bell's marks in the software field with EA rather than with Bell's authorized licensees. The Court should deny EA's 12(b)(6) motion on the FTDA, 15 U.S.C. § 1125(c), and allow Plaintiffs to move forward with their claims under the FTDA.

## IX.

## <u>Conclusion</u>

For the reasons set forth above, Plaintiffs, Bell Helicopter Textron Inc., and Textron Innovations Inc., respectfully request that the Court deny Defendant, Electronic Arts, Inc.'s, Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be denied in its entirety and for all other relief to which the Court determines that Plaintiffs are justly entitled.

Respectfully submitted,

Beale Dean
Texas Bar No. 05685000
Stephen C. Howell
Texas Bar No. 10107700
John G. Sams
State Bar No. 17566100

ATTORNEYS FOR PLAINTIFFS

Of Counsel:

Brown, Dean, Wiseman, Proctor,
         Hart & Howell, L.L.P.
306 West 7th Street
Fort Worth Club Bldg.
Suite 200
Fort Worth, Texas 76102
(817) 332-1391
(817) 870-2427 Facsimile

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the above and foregoing instrument was served upon the attorneys of record for Electronic Arts, Inc. via United States First Class Mail on11th day of June, 2007.

Craig Weinlein                                              Via US Mail
Carrington, Coleman, Sloman & Blumenthal, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202

ORIGINAL



**BROWN DEAN**
Wiseman, Proctor, Hart & Howell L.L.P
ESTABLISHED 1922

DIANNE BLATT-TRZEPACZ
DIRECT DIAL: (817) 820-1141

DBT@BROWNDEAN.COM

June 11, 2007

Clerk, U.S. District Court for the                    Via hand delivery
Northern District of Texas
 Fort Worth Division
U.S. Courthouse, Third Floor
501 W. Tenth St.
Fort Worth, Texas  76102

      Re:    4-06CV-841-A; *Bell Helicopter Textron Inc., et al v. Electronic Arts, Inc.*;
              In the United States District Court for the Northern District of Texas,
              Fort Worth Division

Dear Clerk:

      Enclosed please find an original and three copies of the following document:

**Plaintiffs' Response to Defendant's Motion to Dismiss, and Brief in Support**

      Please file the originals with the other papers in this cause and return file-marked copies to the waiting courier.  If you have any questions, please do not hesitate to contact me.

      Thank you for your assistance in this matter.

                         Sincerely,

                         Dianne Trzepacz
                         Legal Assistant to David Chant

/dbt
enclosure

cc:    Craig Weinlein                           Via US Mail
        Carrington, Coleman, Sloman & Blumenthal, L.L.P.
        901 Main Street, Suite 5500
        Dallas, Texas 75202