CTJ/tle

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH
2007 JUN 19 PM 3:46

| | |
|---|---|
| BELL HELICOPTER TEXTRON INC., AND, TEXTRON INNOVATIONS INC., § § § § v. § § ELECTRONIC ARTS INC. § § | CIVIL ACTION NO. 4-06CV-841-A |

## JOINT STATUS REPORT

Plaintiffs Bell Helicopter Textron Inc., and Textron Innovations Inc., ("Plaintiffs") and Defendant Electronic Arts Inc. ("EA") make the following Joint Status Report submission as required by the Court's May 22, 2007 Order:

1. **Brief Statement of the Nature of the Case and Contentions of the Parties.**

   **Plaintiffs' Contentions:**

   Plaintiff Bell designs, manufactures and sells helicopters under the name Bell Helicopter, which helicopters bear a distinctive non-functional and unique trade dress (including, but not limited to, each respective aircraft's profile and body style) identifying the helicopter as a Bell manufactured aircraft. Said helicopters bearing said distinctive trade dress include the Bell Helicopter Models 205/UH-1, AH-1 and AH-1Z ("Helicopters").

   Plaintiff Bell has sold the distinctive Helicopters at issue since 1967. Upon information and belief, the unique, arbitrary (and non-functional) features of Bell's have caused the Helicopters to become famous, and to take on secondary

meaning in the minds of customers, and resulted in a belief that Bell's Helicopters have a single source of origin.

Plaintiffs TII and Bell own the trade dress in the distinctive, non-functional and unique design (including, but not limited to, each respective aircraft's profile and body style) of the Bell 205/UH-1 "Huey", Bell AH-1 "Cobra" and Bell AH1-Z "Super Cobra" helicopters (hereinafter, collectively "Helicopters").

Plaintiffs TII and Bell own the federally registered trademarks for marks "AH-1Z" (registration No. 2928806), "SUPERCOBRA" (registration No. 2549578), "COBRA" (registration No. 2839441), "HUEY" (registration No. 2868866).

Plaintiff TII licenses the use of Bell's Helicopters (including but not limited to trade dress and trademarks) in products such as motion pictures, aircraft models, video games and computer software.

Defendant Electronic Arts, Inc. has commenced the manufacture of software and video games (including but not limited to the titles "Battlefield Vietnam", "Battlefield Vietnam: Redux" and "Battlefield 2") that prominently feature, utilize and depict Plaintiffs' trademarks, and trade dress without Plaintiffs' permission or approval.

Plaintiffs bring their claims of trademark infringement, trade dress infringement under the Lanham Act, trademark and trade dress dilution under the Federal Trademark Dilution Act, (as well as their state law and common law causes of action including unfair competition and misappropriation and trademark

infringement) stemming from Defendant's unauthorized use of Plaintiffs' trademarks and trade dress (UH-1 "Huey" and AH-1 "Cobra and AH1-Z "Super Cobra helicopters) in and on three of Defendant's video games "Battlefield 2", "Battlefield: Vietnam" and "Battlefield Vietnam: Redux" as well as the images utilized on Electronic Art Inc.'s website and supporting and promotional materials of said games (including, but not limited to, unauthorized use of Plaintiffs' trademarks and trade dress in separately sold game guides for "Battlefield 2", "Battlefield: Vietnam").

EA's Contentions:

Defendant Electronic Arts Inc. ("EA") denies any liability in this case. EA sells certain Battlefield computer games which accurately depict the conditions and environment of armed conflicts. For example, Battlefield Vietnam and Battlefield Vietnam Redux convey accurate information about the Vietnam War. They depict 26 actual land, air and sea vehicles used in the Vietnam War (from 14 different manufacturers) and accurately identify the vehicles by their military names. Likewise, Battlefield 2 accurately depicts 28 actual land, air and sea vehicles used in modern armed conflicts (from 13 different manufacturers) and accurately identifies the vehicles by their military names.

Plaintiffs complain that EA's accurate depiction of three helicopters manufactured by Plaintiff Bell Helicopter Textron and EA's accurate identification of the helicopters by name within these three Battlefield games (and their inclusion in ancillary promotional material) infringe and dilute Plaintiffs' purported

trademarks in the names of the helicopters and purported trade dress in the helicopter designs. Plaintiffs' claims fail for multiple reasons.

First, as a threshold matter, the Battlefield computer games are works of artistic expression that stimulate, inform, and entertain, and thus constitute "core," fully–protected speech under the First Amendment. In cases where a party asserts that an expressive work infringes a trademark or trade dress, the Lanham Act is construed narrowly, as courts must balance the defendant's strong First Amendment interests against plaintiff's asserted trademark interests. To prevent an unacceptable chilling effect upon the exercise of these First Amendment liberties, courts have determined that the use of an alleged trademark or trade dress in an expressive work falls outside the reach of the Lanham Act, unless (1) the use has no artistic relevance to the expressive work; (2) or if it has some artistic relevance, the plaintiff demonstrates that the use "explicitly misleads" as to the source or content of the work. Here, Plaintiffs will not come close to this heightened burden: To the contrary, EA's use of Plaintiffs' purported marks have artistic relevance to the Battlefield games, and the use does not explicitly mislead EA consumers as the source or content of the games.

Plaintiffs' claims also fail because they will not be able to establish a number of fundamental elements necessary for recovery under the relevant trademark laws. Plaintiffs cannot establish enforceable rights in their alleged trade dress in the shape of the military helicopters because Plaintiffs will not be able to demonstrate that the three helicopters (1) are non-functional, and (2)

have acquired secondary meaning as to a single source. Plaintiffs' claims based on their registered word marks also fail, because EA's use of the marks constitutes "fair use." Plaintiffs also cannot establish secondary meaning, likelihood of confusion, fame, or likelihood of dilution necessary to support any of their claims.

2. <u>Challenges to Jurisdiction or Venue</u>:

   No challenges to Jurisdiction or Venue have been raised.

3. <u>Pending Motions</u>:

   On April 21, 2007, Defendant EA filed its 12(b)(6) Motion To Dismiss. Plaintiffs filed their response on June 11, 2007. EA intends to file a Reply within the time permitted by local rules.

4. <u>Matters Which Require Conference With the Court</u>:

   None at this time

5. <u>Likelihood of Joinder of Other Parties</u>:

   None known at this time.

6. <u>Requested Trial Date and Estimated Length of Trial and Jury Demand</u>:

   Plaintiffs request a trial setting on or after July 1, 2008. Plaintiffs believe the case can be tried in one week. EA believes a trial will take two weeks. Both Plaintiffs and EA have requested a jury in their respective pleadings.

7. <u>Prospects for Settlement and Settlement Negotiations.</u>

   On March 7, 2007, Representatives of the Plaintiffs (Tim Harrington (Deputy General Counsel - Litigation, Bell Helicopter Textron Inc.), Russell Holloway (Associate General Counsel - Intellectual Property, Bell Helicopter Textron Inc.), James Runstadler (Vice President - Licensing, Textron Innovations Inc.), Beale Dean, John Sams and

David Chant (counsel for Plaintiffs)) and representatives from Electronic Arts Inc. (Jacob J. Schatz (Vice President, Legal Affairs) and Craig Weinlein (counsel for Defendant)) met in person at the offices of Brown, Dean, Wiseman, Proctor, Hart & Howell L.L.P. to discuss settlement of this action. The parties discussed settlement in good faith, but no agreement was reached.

The parties will agree to mediation.

8.   <u>Other Matters Relevant to the Status and Disposition of the Case:</u>

*The following was presented by EA for inclusion in the Joint Status Report at noon on the date it was to be filed. It is included at the request of EA's counsel, though Plaintiffs' counsel believe that it is more appropriately addressed by separate motion. With only a few hours to respond, Plaintiffs have provided an outline of a response below.*

<u>By EA Only</u>:

"A.   EA's proposal for filing an early motion for summary judgment on its First Amendment Defense.

A fundamental and threshold issue is the extent to which the First Amendment bars Plaintiffs' claims in light of the *Rogers* balancing test and the heightened "likelihood of confusion" standard. *Rogers v. Gimaldi*, 875 F.2d 994, 999 (2d Cir. 1989); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). EA submits that significant time and expense can be saved if it is permitted to file an early motion for summary judgment asserting its First Amendment defenses. EA proposes that by Court Order the parties be granted a limited period of time (perhaps 90-120 days) to conduct all discovery concerning the application of the *Rogers* balancing test and the heightened "likelihood of confusion" standard. Thereafter, EA will file its early motion for summary

judgment limited to the First Amendment defense, and Plaintiffs will respond to the substance of the motion and not invoke Rule 56(f). If the motion if granted (as EA anticipates), the Court and the parties will save substantial time and expense. If the motion is not granted, no increased burden is imposed on Plaintiffs.

This expedited schedule that focuses on "likelihood of confusion" is reasonable and fair, given that Plaintiffs have already had over 6 months since they filed their complaint in December 2006 to gather all the evidence on which they bear the burden of proof. With their initial disclosures, plaintiffs should promptly disclose all the evidence in plaintiffs' possession (including any evidence from experts) that plaintiffs will rely on to support their claims and survive an early motion for summary judgment on the First Amendment.

The other areas of discovery – such as whether any aspect of Plaintiffs' helicopters is non-functional; whether any aspect of the helicopters has acquired "secondary meaning" as to a single source of origin; whether any of Plaintiffs' alleged marks are "famous and distinctive;" and whether Plaintiffs have suffered any damages – are exceptionally fact-intensive, very expensive, and require input from experts. EA would prefer to focus initial discovery on the facts surrounding its First Amendment defense, but EA will defer to the Court and to Plaintiffs as to whether the other areas of discovery should be conducted at the same time as the initial phase of discovery or deferred for some period of time. EA's primary interest is having the opportunity to file an early motion for summary

judgment on the First Amendment and not have plaintiffs invoke Rule 56(f) claiming more discovery is needed.

If EA's early motion for summary judgment does not dispose of all Plaintiffs' claims (which EA believes it will), EA would be prepared to move for summary judgment on the remaining issues at the appropriate time. Therefore, pursuant to Local Rule 56.5.b., EA also requests that the Court grant EA leave to file potentially two motions for summary judgment – an early motion for summary judgment limited to the First Amendment Defense, and a later motion for summary judgment on any claims that remain (if any).

EA recognizes that its proposal is unusual; however, this is not the usual trademark infringement case. EA believes that its proposal can save time and expense for all involved and EA prays that the Court view its proposal with favor.

B.  EA's Proposal For Time to Respond to Plaintiffs' Survey Expert Disclosure

In this case, there are a number of issues on which Plaintiffs may or may not elect to present survey evidence, including likelihood of confusion, secondary meaning, fame of the mark, likelihood of dilution, etc. Plaintiff has the burden of proof on each and every one of these issues, and EA does not need to retain an expert or conduct a survey unless Plaintiffs decide to present such a survey. Of course, Plaintiffs already have had substantial time to conduct such surveys, going back to the time of Plaintiffs' pre-filing investigation, although plaintiffs will not disclose whether they have already conducted such surveys or whether they intend to conduct such surveys.

EA respectfully requests that it be allowed 90 days to present expert reports in rebuttal to reports of any survey experts retained by plaintiffs. This request is necessary due to the substantial time required to properly design, conduct and tabulate a trademark survey. Typically, it takes a survey expert two to three weeks to design a survey, three to four weeks to conduct the survey, and another two weeks to tabulate the results and prepare a report.

EA does not seek any modification of the court's usual practice regarding disclosure of other (non-survey) experts."

By Plaintiffs:

"Plaintiffs request that the foregoing be treated as a Motion and that Plaintiffs be afforded the time permitted under the local rules to Respond. In brief, however, Plaintiffs would show the Court that the "First Amendment" issue raised by EA is neither fundamental nor threshold. It is one of a series of defenses raised by EA to the claims in this lawsuit. Significant time and expense will always be saved if the discovery permitted on one of the defendants' main defenses in the case is truncated to 90 or 120 days. It goes without saying that significant time and expense would also be saved if the defendant's time to conduct discovery on the plaintiffs' claims is similarly limited. The primary purpose of discovery, however, is to permit the parties time to prepare their cases for trial, not to save time. The factual matters inherent in EA's "First Amendment" defense stretch across all the discovery that needs to be conducted

in this case, and that cannot reasonably be completed in 3 or 4 months. EA's motion, if granted, would save time and expense only because it would undermine Plaintiffs' ability to respond on the merits to a motion for summary judgment.

EA is also incorrect in its assertion that Plaintiffs have already "had over 6 months since they filed their complaint in December 2006 to gather all the evidence on which they bear the burden of proof". EA just answered the case, no scheduling order has been issued, and no substantive discovery has taken place. Plaintiffs clearly cannot conduct discovery in the case before the defendant answers. EA also seems to overlook that Plaintiffs have been quite engaged over the past few weeks responding to a lengthy 12(b)(6) motion EA filed with its Original Answer. Finally, Plaintiffs disagree with EA's contention regarding the content of its initial disclosures and the requirement that Plaintiffs make expert disclosures immediately. To the extent EA wishes to impose that requirement in this case, it has not shown good cause for such a request.

With respect to expert disclosures, EA is certainly at liberty to retain such experts as it desires to assist in the defense of the case. Whether it chooses to do so or not is a tactical decision. If EA believes that survey data is necessary to defend the case, it has ample time to begin that process now, and does not need to await expert disclosures from the Plaintiffs before deciding whether to begin a survey. No doubt, any litigant would save time and expense if the other side was

required at the outset of litigation to disclose the subject matter and identity of experts it intends to call at trial."

Respectfully submitted

*[signature: Beale Dean]*

Beale Dean
Texas Bar No. 05685000
Stephen C. Howell
Texas Bar No. 10107700
John G. Sams
State Bar No. 17566100
Brown, Dean, Wiseman, Proctor,
    Hart & Howell, L.L.P.
306 West 7th Street
Fort Worth Club Bldg.
Suite 200
Fort Worth, Texas 76102
(817) 332-1391
(817) 870-2427 Facsimile

**ATTORNEYS FOR PLAINTIFFS
BELL HELICOPTER TEXTRON INC.
and TEXTRON INNOVATIONS INC.**

*[signature: Craig Weinlein]*

Craig W. Weinlein
State Bar No. 21095500
Prescott W. Smith
State Bar No. 24013534
Omar Kilany
State Bar No. 24026974
Carrington, Coleman, Sloman
    & Blumenthal, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
(214) 855-3000
FAX (214) 855-1333

**ATTORNEYS FOR DEFENDANT
ELECTRONIC ARTS INC.**