


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BELL HELICOPTER TEXTRON INC., <br> TEXTRON INNOVATIONS INC, <br><br> *Plaintiffs,* <br><br> v. <br><br> ELECTRONIC ARTS INC., <br><br> *Defendant.* | § § § § § § § § § § § § § | CIVIL ACTION NO. 4-06CV-841-A |

**DEFENDANT ELECTRONIC ARTS INC.'S REPLY
TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

**To the Honorable Court:**

Defendant Electronic Arts Inc. ("EA") replies to Plaintiffs' Response to the Motion to Dismiss ("Response") as follows:

### I. Introduction

Plaintiffs' Response acknowledges that this case implicates EA's First Amendment rights against Plaintiffs' asserted trademark interests. Notably, Plaintiffs do not direct this Court to a single allegation in their Second Amended Complaint ("Complaint") that satisfies the requirements of Section 43(a) of the Lanham Act. Plaintiffs have not – and cannot – allege that EA has engaged in commercial speech in the *Battlefield* games, an element that the Fifth Circuit requires for a Section 43(a) claim under the Lanham Act. As a result, the Court should dismiss Plaintiffs' claims under Section 43(a) that challenge the inclusion of Plaintiffs' alleged unregistered trademarks and trade dress within the content of the *Battlefield* games.

The Response also acknowledges that Plaintiffs do not complain about EA's *trademark* use of Plaintiffs' marks, as required by the federal dilution statute. Instead, Plaintiffs incorrectly argue that a dilution claim is not limited to a complaint about a defendant's mark. Plaintiffs argue that a multifactor test must be applied to determine if a defendant's mark is likely to cause dilution, but this response misses the point. Plaintiffs first must complain about a defendant's mark, because a defendant's mark is what the multifactor test considers. The Court should accordingly dismiss Plaintiffs' claim for dilution under 15 U.S.C. § 1125(c).

## II. The New Pleading Standard Under Fed. R. Civ. P. 12(b)(6).

The Response cites to *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), as setting forth the standard for this Court's review of EA's Motion to Dismiss ("Motion"). Response at 1. *Conley* is no longer good law. In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), decided on May 21, 2007, the Supreme Court expressly disavowed the oft-quoted statement from *Conley* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct at 1968, 1969 (quoting *Conley*, 355 U.S. at 45-46).[1]

To avoid dismissal under the Supreme Court's new Rule 12(b)(6) standard, a complaint must do more than simply present a claim that has a "possibility" of an "entitlement to relief"; instead, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic*, 127 S.Ct. at 1274. Here, the Complaint fails to meet this standard with respect to both claims at issue in EA's Motion.

---

[1] The problem with *Conley*, the Court explained, is that if taken literally, it would mean that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Bell Atlantic*, 127 S.Ct. at 1968 (internal corrections omitted). That, of course, is exactly what the Response asks this Court to do.

### III. Plaintiffs' Claims Under 15 U.S.C. § 1125(a)(1) That Challenge the Content of the *Battlefield* Games Must Be Dismissed.

Section 43(a) of the Lanham Act only applies to commercial speech. The Complaint, correctly, does not allege that the *Battlefield* games are commercial speech. Yet Plaintiffs raise three arguments in response to EA's Motion. None has merit.

*First*, for whatever reason, Plaintiffs incorrectly state that EA seeks to dismiss *all* of Plaintiffs' Lanham Act claims on the theory that expressive works protected by the First Amendment are "completely exempt from the Lanham Act." Response at 2 & 4. EA says no such thing, as its motion makes clear. Motion at 3-5. EA moves to dismiss only those portions of the two infringement claims under Section 43(a) of the Lanham Act that challenge the inclusion of Plaintiffs' alleged unregistered trademarks and trade dress within the content of the games themselves. Motion at 2-3 (seeking dismissal of portions of Sections 4.0 and 6.0 of the Complaint).

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), applies to infringement claims of unregistered marks, in contrast to 15 U.S.C. § 1114, which applies to infringement claims of registered marks. EA seeks dismissal of only those portions of the two claims under Section 43(a) for infringement of Plaintiffs' alleged marks that are both (i) unregistered and (ii) within the content of the games themselves. Motion at 3. The Motion is not directed to Plaintiffs' claims for infringement of the unregistered marks in the ancillary promotional material (Complaint §§ 4.0 & 6.0), nor to Plaintiffs' claims for infringement of their registered marks both in the games and in ancillary promotional material.[2] (Complaint § 5.0)

---

[2] It is noteworthy that Plaintiffs and EA do agree, however, that with respect to those remaining infringement claims, the Court will have to apply the *Rogers* balancing test that weighs EA's strong First Amendment rights against Plaintiffs' asserted trademark interests. *See* Response at 3- 4 & 9. *Rogers v. Grimaldi*, 875 F.2d. 994, 999 (2d Cir. 1989); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). The *Rogers* balancing test provides that

*Second*, Plaintiffs argue that the motion should be denied because there might be a fact issue regarding whether the games are "commercial speech." Response at 5. But Plaintiffs never *allege* that the games are "commercial speech," and thus cannot rely on a non-existent allegation to avoid a motion to dismiss. Moreover, the Court now has before it copies of the games themselves (Motion at 1, n.1), and it can conclude that Plaintiffs could not allege that the games are "commercial speech," because they do not "merely propose[] a commercial transaction" nor are they advertisements for separate products. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976); *Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 67 (1983).

*Third*, Plaintiffs fail to adequately distinguish *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001), the binding Fifth Circuit authority that Section 43(a) of the Lanham Act applies only to commercial speech. Response at 6-8. Plaintiffs draw an unsupportable distinction between 15 U.S.C. § 1125(a)(1)(A) and § 1125(a)(1)(B), and then suggest that *Proctor & Gamble* did not intend its holding to apply to both subsections of Section 43(a). Response at 6. To the contrary, *Proctor & Gamble* did impose a "commercial speech" limitation to all of Section 43(a). Plaintiffs' argument that the Fifth Circuit only considered subsection (B) is belied by footnote 8, which quotes § 1125(a)(1)(A), not § 1125(a)(1)(B). *Id.* at 545 n.8. Thus, while the court was aware of the potential distinction, it elsewhere made global references to "§ 43(a)" and nowhere refers to § 1125(a)(1)(B) alone.

---

the use of an alleged trademark or trade dress in an expressive work falls outside the reach of the Lanham Act, unless (1) the use has no artistic relevance to the expressive work; (2) or if it has some artistic relevance, the plaintiff demonstrates that the use "explicitly misleads" as to the source or content of the work. *Id.* In the Fifth Circuit, a plaintiff can only meet this heightened burden of proving that the use "explicitly misleads" if the plaintiff can adduce competent evidence that there is a "<u>particularly compelling</u>" likelihood of confusion among the defendant's consumers in light of the seven "digits of confusion." *Id.* at 664-65.

### IV. Plaintiffs' Claim for Dilution Under 15 U.S.C. § 1125(c) Must Be Dismissed.

Section 7.0 of the Complaint, entitled "Dilution of Famous Marks," attempts to plead a claim for dilution of Plaintiffs' alleged trademarks and trade dress under 15 U.S.C. § 1125(c). EA has moved to dismiss this claim[3] because Plaintiffs do not – and cannot – allege that EA's own <u>marks</u> are likely to cause dilution, or that EA has used any of Plaintiffs' marks as EA's own mark, as required by the Trademark Dilution Revision Act ("TDRA").

#### A.   The TDRA Requires Defendant's *Trademark* Use of The Marks In Question.

Under the TRDA, "dilution by blurring" requires that the defendant make actual *trademark* use of the mark – whether that mark is the defendant's own mark or plaintiff's alleged famous mark that the defendant purportedly uses as its own trademark. *See* Motion at 5-6. Indeed, analysis of the history of the federal dilution statute makes clear that this has always been a requirement, under either the old or the new version of the statute.

As originally enacted in 1996, the Federal Trademark Dilution Act (FTDA) provided:

> The owner of a famous mark shall be entitled ... to an injunction against *another person's commercial use in commerce of a mark or trade name*, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark . . . .

15 U.S.C. § 1125(c)(1) (2005) (emphasis added). The Lanham Act defines some of these terms:

> The terms 'trade name' and 'commercial name' mean any name used by a person to identify his or her business or vocation.
>
> The term 'trademark' includes any word, name, symbol or device, or any combination thereof -- (1) used by a person ... to identify and distinguish his or her goods, including a unique product, from those

---

[3] The Response suggests that EA's motion is vague in describing the relief requested. To the contrary, EA's motion clearly states that EA moves to dismiss "Plaintiffs' claim under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) (Section 7.0 of Plaintiffs' Complaint)." Motion at 7-8; *see also* Motion at 2, 5 - 7. Plaintiffs' confusion (if any) appears to stem from their own mistaken use of the word "dilution" in the heading of Sections 4.0 and 5.0 of the Complaint. Neither section, however, alleges dilution; instead, they allege trademark and trade dress infringement. The only federal dilution claim is Section 7.0.

5

> manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127 (2006). Therefore, under the original FTDA, a person's "commercial use in commerce of a mark" meant a person's use in the ordinary course of trade of some word or symbol to identify that person's own goods and distinguish his goods from the goods of others. Accordingly, relief for dilution was available only against another person's [*i.e.*, the defendant's] use of a word or symbol which the defendant is using to identify his own goods.

The leading academic authority on the Lanham Act, Professor J. Thomas McCarthy, confirms that a claim for dilution must complain about the defendant's mark:

> The Federal Anti-Dilution Act requires *more* than the traditional Lanham Act's requirement of use of the accused designation 'in connection with' goods or services. The Anti-Dilution Act requires that the accused user make a 'commercial use in commerce of a mark or trade name.' This means that the accused person must use the designation as a 'mark or trade name' and as part of a commercial use.

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:90 (2006) (emphasis in original).

> Dilution by blurring occurs if the defendant uses the word as its own *trademark* for goods that are so different that no confusion of source or sponsorship can occur.
>
> . . .
>
> [B]ecause the statute says that the accused use be use of a 'mark or trade name,' it means that the accused use must be a trademark or trade name use, not that the use can be any kind of use of the famous 'mark or trade name.' If the statute meant to refer to the use of the plaintiff's 'famous mark,' it would say so. Thus, in the author's view, the federal statute effectively codifies the case law rule under the state statutes that a non-trademark use does not dilute.

*Id.* at § 24:103 (emphasis in original). Not surprisingly, courts considering dilution claims have adopted this analysis and have required that a defendant must "us[e] the trademark as a *trademark, capitalizing on its trademark status.*" *TMI, Inc. v. Maxwell*, 368 F.3d 433, 437 (5th

6

Cir. 2004) (emphasis added). *See also Lyons P'Ship, L.P. v. Giannoulas*, 14 F. Supp. 2d 947, 954 (N.D. Tex. 1998) (McBride, J.) (explaining that plaintiff could not have brought a dilution claim "because defendants do not use plaintiff's mark to identify any of their goods or services.")

The FTDA was amended by the Trademark Dilution Revision Act (effective October 6), 2006), and the revised statutory language even more strongly emphasizes that dilution requires that the defendant must use the accused designation *as the defendant's mark*. The statute now provides:

> Subject to the principals of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, *commences use of a mark or trade name in commerce* that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark . . . .

15 U.S.C. § 1125(c)(1) (2006) (emphasis added). The statute now also specifically defines "dilution by blurring" as "an association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). As this definition makes clear, dilution thus requires a comparison between the defendant's own <u>mark</u> and the plaintiff's famous mark, and the statute offers a remedy only if the defendant's <u>mark</u> is likely to cause dilution of the plaintiff's famous mark.

**B.     The Complaint Fails to Allege That EA Has Made a *Trademark* Use of Any Marks In Question.**

The Complaint does not allege the predicate act to satisfy the statutory definition of "dilution by blurring" – indeed, the Complaint contains no allegations regarding EA's "mark[s] or trade name" used in connection with the *Battlefield* games – whether EA's own marks (*e.g.*, "Electronic Arts") or Plaintiffs' alleged marks as EA's own. Plaintiffs' single conclusory allegation that EA's inclusion of Plaintiffs' marks in the *Battlefield* games "blurs" and "dilutes" Plaintiffs' marks (Complaint § 7.7) failure to state a claim under the TDRA, especially in light of

*Bell Atlantic*. The Response concedes the Complaint's omission of these allegations, but argues simply – and incorrectly – that the language of the federal dilution statute and court decisions that require allegations of the defendant's *trademark* use of the mark in question do not apply.

Plaintiffs cite no authority that holds that a defendant's non-trademark use of a plaintiff's mark is actionable under the federal dilution statute. Faced with the multiple authorities cited by EA, Plaintiffs reply only that those authorities "interpret the older version of § 1125(c)." Response at 12. Yet for the reasons explained in the preceding section, that is a distinction without a difference, and it belied by at least one recent decision which held that a complaint must plead the defendant's *trademark* use of its mark to state a cause of action under the 2006 amendments to the FTDA. *See Nacco Materials Handling Group, Inc. v. Lilly Co.*, 2007 WL 1720043, *6-7 (W.D. Tenn. June 5, 2007) (dismissing TDRA claim under Rule 12(b)(6), because "Plaintiffs have not alleged that the Defendants have commenced the use of a junior mark. Rather, they argue that the Defendants' selling of Toyota forklifts alongside Yale forklifts dilutes the Yale trademark. This simply is not so. The Toyota name is not a junior mark which would lessen the ability of Yale to identify its own goods; indeed, Toyota is itself a separate famous mark.").

Plaintiffs argue that the Court cannot determine whether the Complaint states a cause of action for "dilution by blurring" because the federal dilution statute requires a fact-specific inquiry into whether the defendant's use of a plaintiff's mark is likely to cause dilution by blurring. Response at 11 – 12. Plaintiffs' argument puts the cart before the horse and reveals a fundamental misunderstanding of a federal "dilution by blurring" claim. Before a defendant's use of a mark or trade name is likely to cause dilution, a plaintiff must first complain that the defendant has used the marks in question as the defendant's own mark. Here, as the Response

concedes, the Complaint contains no such allegations, as Plaintiffs do not complain about EA's mark – whether it is EA's own marks or EA's use of Plaintiffs' marks as EA's own.

Even the cases cited by Plaintiffs supports EA's position that a federal dilution claim requires allegations regarding either defendant's mark or defendant's *trademark* use of plaintiff's mark. In *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029 (9th Cir. 2007), the defendant used the plaintiff's famous mark as a metatag to lure would be customers to his website and then, on the website, used the plaintiff's mark to refer to defendant's product, as part of a "bait and switch." 475 F.3d at 1033, 1037. Affirming the trial court's judgment of dilution, the Ninth Circuit stated "[b]lurring occurs when a defendant uses a plaintiff's trademark *to identify the defendant's goods or services*, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* at 1037 (citation omitted) (emphasis added). In *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831 (N.D. Ill. 2002), the manufacturer of a map displaying the Disney trademarks defended against both a trademark infringement claim and trademark dilution claim by raising the nominative fair use defense. 235 F. Supp. 2d at 842-43. In considering this defense to the trademark infringement claim, the court held that map manufacturer had made a "trademark use" of Disney's famous marks. *Id.* at 843. Notably, because the court rejected this defense with respect to the infringement claim, it reasoned that it did not need to consider it again with respect to the dilution claim. *Id.* at 846. Unlike these cases, Plaintiffs do not allege that EA uses any of their marks to identify EA's goods; in other words, as EA's <u>own mark</u>.[4]

---

[4] Other cases cited by Plaintiffs also support EA's position, because in each case, the plaintiff properly asserted a dilution claim with respect to defendant's *trademark* use of its own mark. *See, e.g., Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 119-20 (D. Mass. 1999) (holders of "Clue" board game mark alleged dilution claim regarding defendant's own "Clue Computing" mark and www.clue.com domain name); *Ringling Bros.-Barnum & Bailey*

9

Plaintiffs state that they need not allege that EA has used its marks as EA's own marks; instead, they may simply allege that "EA is utilizing its trademarks and trade dress in its products and that such use of Plaintiffs' trademarks and trade dress in EA's software *implies that Plaintiffs sponsored the game software*." Response at 14 – 15. This statement reveals a fundamental confusion between an infringement claim and dilution claim, and proves EA's point that the Complaint fails to state a cause of action for dilution: Plaintiffs do not contend that EA's use is "likely to cause dilution" (*i.e.*, the element of a dilution claim). Instead, they complain that EA's use implies sponsorship. Confusion as to sponsorship, however, is one type of likelihood of confusion, which is an element of an *infringement* claim.

## PRAYER

For the reasons set forth above, EA prays that the Court grant EA's motion to dismiss in its entirety.

---

*Combined Shows, Inc. v. Utah Division of Travel Development*, 955 F. Supp. 605, 608-09 (E.D. Va. 1997) (dilution claim regarding defendant's own "The Greatest Snow on Earth" mark); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F. Supp. 204, 206-07 (same).

        Respectfully Submitted,

*[signature]*

**Craig W. Weinlein**
  State Bar No. 21095500
**Prescott W. Smith**
  State Bar No. 24013534
**Omar Kilany**
  State Bar No. 24026974
**CARRINGTON, COLEMAN, SLOMAN**
  **& BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
(214) 855-3000
FAX (214) 855-1333

*Attorneys for Defendant Electronic Arts Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon attorneys of record of all parties to the above cause via United States First Class Mail on this 27th day of June, 2007.

*[signature]*

Omar Kilany